**In re Anonymous No. 15 D.B. 90**

Disciplinary Board No. 15 D.B. 90.

GILBERT, *Member,* April 14, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

**114**

Respondent, [   ], was admitted to the practice of law in the Commonwealth of Pennsylvania on October 6, 1978. He maintains his office at [   ].

On January 30, 1990, Office of Disciplinary Counsel filed a petition for discipline against respondent in which it was averred that respondent violated the Disciplinary Rules of the Code of Professional Responsibility by mishandling the settlement funds of his client. On March 5, 1990, respondent filed an answer to the petition for discipline in which respondent admitted his negligence in handling the funds of his client and admitted violating D.R. 9-102(A) and D.R. 9-102(B)(3). Further answering, respondent stated that the misconduct was an isolated incident occurring at a period of time respondent was an active alcoholic.

On March 5, 1990, the matter was referred to Hearing Committee [   ], consisting of [   ]. On April 27, 1990, [   ] was appointed to Hearing Committee [   ] to replace [   ].

A hearing was held on May 29, 1990. On the day of the hearing, the parties entered into a stipulation of facts and documents in which respondent, through his counsel, [A], Esq., admitted the underlying misconduct and violations of D.R. 9-102(A) and D.R. 9-102(B)(3). On September 14, 1990, the Hearing Committee filed its report in which the committee recommended that respondent receive an informal admonition. The committee considered in mitigation respondent's alcohol dependency.

On October 4, 1990, Office of Disciplinary Counsel filed a brief on exceptions to the report of the Hearing Committee. Petitioner argued that the Hearing Committee erred in failing to find that respondent violated D.R. 1-102(A)(3) and D.R. 1-102(A)(4) and the committee erred

in considering in mitigation respondent's alcoholism. Petitioner specifically took exception to the recommended discipline of an informal admonition and urged that respondent be suspended from the practice of law for a minimum of one year.

On October 24, 1990, respondent filed a letter in response to petitioner's brief on exceptions in which respondent advocated adopting the recommendation of the Hearing Committee.

The matter was adjudicated by the Disciplinary Board on November 2, 1990. By order dated November 13, 1990, the board remanded the matter to the Hearing Committee with instructions to re-evaluate the recommendation of an informal admonition in view of the precedential cases cited by Office of Disciplinary Counsel in its brief on exceptions.

On December 31, 1990, the Hearing Committee filed an amended report in which the committee recommended that respondent be suspended from the practice of law for a period of six months. On January 30, 1991, respondent filed a brief on exceptions to the amended report of the Hearing Committee. Respondent took exception to the amended recommendation of discipline for a six-month suspension, arguing that the recommendation was unsupported by any additional finding of fact or case law which was not already considered in the original recommendation. On February 14, 1991, petitioner filed a brief opposing respondent's exceptions to the amended report of the Hearing Committee.

On February 28, 1991, oral argument was held before board members Daniel R. Gilbert, chairperson, James J. Powell, Esq., and Patricia S. McGivern, Esq. Thereafter, the matter was adjudicated by the Disciplinary Board at its March 8, 1991 meeting.

## FINDINGS OF FACT

The basic underlying facts of respondent's misconduct are not in dispute and have been stipulated by the parties as follows:

[B] suffered injuries while riding on a [C] bus. A civil action had been filed in the [   ] County Court of Common Pleas on behalf of [B] by predecessor counsel, [D], Esq. However, [B] decided to retain new counsel and had been represented by several attorneys, some of whom advised [B] that they would not continue representing her in the matter. Thereafter, in 1984 or 1985, [B] retained respondent to represent her in regard to the civil action for her personal injuries. The defendants in this matter were [C] and [E]. The theory of liability was that [E], while parked in a fire lane at a shopping center, opened her car door in the path of the [C] bus [B] was riding on, forcing the bus driver to jam on the brakes, thereby causing [B] to fall and injure herself.

[C] was represented by [F], Esq., and [E] was represented by [G], Esq. On April 1, 1986, respondent reached an agreement with counsel for the defendants to settle the claim for the total sum of $7,000, to be paid in equal shares by the two defendants. On April 3, 1986, [G] sent respondent a release and a [H] Insurance Co. check in the amount of $3,500, which represented [E's] portion of the settlement. [G] requested that respondent not disburse the funds to [B] until the release was signed and the certificate of settlement obtained.

Respondent promptly notified his client, [B], of the receipt of the funds, and advised her that he could not distribute the funds until she signed a release. [B] refused to sign a partial release in favor of [E] and [H] Insurance, so respondent was unable to disburse the funds to her at that time.

On April 4, 1986, respondent deposited the [H] Insurance check along with $300 of other funds into his [I] bank account no. [    ]. This [I] Bank account was not a trust account, but rather a general account from which respondent made personal and office expenditures. The balance in respondent's [I] Bank account immediately before he deposited [B's] funds was $224.25. After depositing the [B] funds, respondent made numerous disbursements and withdrawals from this account for personal and office expenses which resulted in the account being overdrawn on April 25, 1986.

On November 30, 1987, [B] demanded some payment on her settlement, although she still would not sign the release. Respondent was willing to make disbursement to [B] but advised her that he could not do so until she signed the release. Due to the fact [B] expressed an urgent need for funds, respondent wrote check no. 1587 on his [I] Bank trust account in the amount of $500 to [B] as a personal loan or an advance on her settlement. [B] reimbursed respondent for this loan on December 9, 1987.

Also, on December 9, 1987, respondent met with [B] and she executed a release in favor of [E] and the [H] Insurance Co. Respondent then disbursed to [B] two checks in the amount of $1,834 and $500. This was a complete disposition of funds to which [B] was entitled at that time. The checks were drawn on respondent's trust account at [J] Bank. Respondent never deposited any funds attributed to [B] into this account. The funds paid to [B] were made entirely from personal funds commingled in the trust account.

On January 20, 1988, [K], an investigator for the Office of Disciplinary Counsel, questioned respondent at his law office in [    ] County. During the course of their discussion, [K] asked respondent if he kept the [B] funds

in an escrow account and intact since receipt. Respondent answered both questions in the affirmative. Later the same day, during a telephone conversation, [K] further questioned respondent about the nature of respondent's trust account. Respondent reiterated his original answers. However, the [B] funds were not deposited in an escrow account and the account had been overdrawn. When answering the questions of the investigator, respondent knew the funds had not been kept intact for the entire period, but was mistaken as to the account into which he had deposited the funds. At that time, respondent's records were in a disarray due to poor record-keeping and he did not have an opportunity to locate or review his records before responding to the investigator's questions. It was not until March 10, 1988, at which time Office of Disciplinary Counsel confronted respondent with the [H] Insurance check representing the [B] funds, that respondent had the opportunity to review this transaction.

In the interim, respondent learned that [C] had gone into receivership and that claims were being handled by the [L] Adjustment Bureau of [    ]. In January 1988, respondent reached an agreement with the [L] Adjustment Bureau in which the Pennsylvania Insurance Guaranty Association would pay [C's] portion of the settlement. Respondent completed the necessary paperwork and received payment from PIGA on March 1, 1988. On March 8, 1988, respondent met with [B], at which time she signed the release and endorsed the PIGA check. Respondent had the check deposited into the trust account of his wife, [A], Esq. Respondent believed that the Office of Disciplinary Counsel had advised him to do so. On March 9, 1988, [A] issued a check to [B] in the amount of $2,344. On March 24, 1988, respondent voluntarily paid to [B] the sum of $275.32 as interest on the funds held by respondent.

The following findings of fact were determined by the Disciplinary Board after review of the record.

Respondent, born in 1939, graduated from [ ] School of Law in 1978 and was admitted to the practice of law in the Commonwealth of Pennsylvania on October 6, 1978. Since 1982, respondent has been a sole practitioner, handling mainly criminal defense cases.

Respondent is a recovering alcoholic. His addiction to alcohol had a negative impact on his life. In particular, respondent became separated from his first wife in January 1986. His marriage eventually ended in divorce which caused him to be separated from his only son. Respondent testified that he was deeply troubled by the breakup of his family. Due to his realization that his alcoholism caused his marriage to dissolve, respondent sought the aid of a physician and asked to be prescribed Anatabuse, a drug that causes sickness when alcohol is ingested. However, respondent's alcoholism was not abated because he only engaged in selective sobriety; respondent took the drug at times of his own choosing.

During the time respondent was engaged in his misconduct between April 1986 and January 1988, respondent was in an active state of alcoholism which was exacerbated by his divorce and separation from his son, which occurred in January 1986. Respondent's admitted failure to properly maintain his trust account was caused by his active state of alcoholism. On June 10, 1988, during the time respondent's second and current wife was preparing to leave him due to respondent's problem with alcohol, respondent joined Alcoholics Anonymous. Since that day, respondent has remained sober. Respondent attends AA meetings five times a week and attends group therapy sessions with his wife. For the first six months of his attendance at AA meetings respondent also obtained outside counseling. Respondent currently serves as public

information officer for the [ ] District of AA and speaks at the [ ] Hospital DUI classes as well as before other groups seeking information about alcoholism.

When first confronted by the Office of Disciplinary Counsel about the status of his trust account, respondent gave inaccurate information to the investigator that the funds had been kept intact in a trust fund. This representation was a result of negligence for he was unable to discern from his poor record-keeping and state of mind into what account he had deposited the funds. Thereafter, respondent fully cooperated with the investigator of this matter by turning over his bank records and checks to the Office of Disciplinary Counsel for the time period of 1986 through 1988.

Respondent has implemented a new bookkeeping system with the guidance of [M], a certified public accountant. Respondent, with the aid of [M], set up a trust account with a ledger book. In the past 20 months, [M] has reviewed respondent's trust account twice. Since the implementation of the new record-keeping system, respondent has continued to practice law to the present time, without incident.

## CONCLUSIONS OF LAW

The board determined that respondent's conduct constituted a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(3)—which prohibits an attorney from engaging in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(6)—which prohibits an attorney from engaging in conduct that adversely reflects on his fitness to practice law;

(c) D.R. 9-102(A)—which requires that all funds of clients paid to a lawyer or law firm other than advances

for costs and expenses shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated; and

(d) D.R. 9-102(B)(3)—which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them.

## DISCUSSION

The record indicates that respondent was retained to represent [B] in a civil action for personal injuries. After reaching an authorized settlement agreement, respondent received a check on behalf of his client and promptly notified his client of his receipt. However, [B] refused to sign a release in favor of the defendants, thus, respondent was unable to disburse the funds at that time.

On April 4, 1986, respondent deposited the settlement funds into a non-segregated bank account and proceeded to convert these funds for his own personal and business expenses. On December 9, 1987, [B] executed a release in favor of the defendants and respondent made a complete disposition of the funds to which [B] was entitled at that time. After completing further work in regard to collecting funds on behalf of his client, respondent made a final disbursement to his client on March 9, 1988. In addition, respondent voluntarily paid to [B] the sum of $275.32, which represented the interest on the funds held by respondent.

There is no doubt that respondent's misconduct involves moral turpitude. The unauthorized use of client funds is inexcusable even when accompanied by an intent to return such funds. *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987). Clearly, re-

spondent's misconduct constitutes a violation of the Disciplinary Rules and the board must determine the appropriate discipline to be imposed.

There is no per se rule requiring disbarment of an attorney who commingles or converts clients' funds. *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 280, 472 A.2d 186, 190 (1983). In its de novo review, the board must determine the appropriate discipline on the totality of the facts unique to this particular case. 504 Pa. at 280, 472 A.2d at 190.

Although respondent's misconduct is serious, significant mitigating circumstances exist in this case. At the time respondent engaged in misappropriating his client's funds in April 1986, he was an active alcoholic. In order for respondent's alcoholism to be considered as a mitigating factor, such that probation would be warranted, respondent must prove by clear and convincing evidence that the alcohol abuse was a causal factor in his misconduct. *Office of Disciplinary Counsel v. Braun*, 520 Pa. 157, 553 A.2d 894 (1989); Disciplinary Board Rules §89.293. At the hearing, respondent and his current wife, [A], Esq., who is representing respondent in this disciplinary matter, testified extensively to respondent's alcoholism during the period of his misconduct. In this case, respondent was a sole practitioner and also his own bookkeeper and office manager. Respondent's failure to properly handle the funds of his client was negligent and resulted from his active alcoholism which was at the time aggravated by the break-up of his first marriage. Thus, the board finds that respondent's alcoholism was a factor in causing his misconduct. As a result, the board will consider respondent's alcoholism, but only in mitigation. Alcoholism or any other type of substance abuse is not an excuse for violations of the Disciplinary Rules. Other factors the board will consider in mitigation are as follows: The

delay in disbursement of funds was due entirely to the client's refusal to sign the required release rather than from any action on the part of respondent; at no time did respondent mislead or make false representation to his client; at all times respondent represented his client completely; neither respondent's client nor anyone else associated with the litigation was prejudiced by respondent's misconduct; respondent made restitution immediately upon his client's signing of a release in favor of the defendants; and respondent did not engage in a pattern of conversion, but rather this case involves one isolated instance of conversion.

The record indicates that respondent's alcoholism is under control. Since June 10, 1988, respondent has abstained from alcohol and is an active participant in the recovery program offered by Alcoholics Anonymous. Respondent has demonstrated that he can engage in the practice of law without causing the courts or the profession to fall into disrepute. Respondent is remorseful for his misconduct and has made full restitution to his client plus interest. Respondent has also implemented a new bookkeeping system in his office with the guidance of [M], a certified public accountant, who has taken the time to review respondent's trust account records.

A review of precedential cases involving similar misconduct reveals that conversion and commingling of clients' funds is a serious transgression warranting suspension. In the case *In re Anonymous No. 14 D.B. 80*, 18 D.&C.3d 503 (1980), the respondent was suspended from the legal practice for one year for his misconduct which included conversion of his client's funds in the amount of $7,500. In another case, the respondent misappropriated to his personal use $2,790 from a trust account established for his minor client and was dilatory in returning said funds. The attorney was suspended

for a period of one year. *In re Anonymous No. 15 D.B. 80,* 20 D.&C.3d 243 (1981).

In the case *In re Anonymous No. 132 D.B. 88* (1990), the respondent was suspended for a period of two years for misappropriating client funds for a period of 16 months.

After review of the case law and the record in this matter, the board believes that suspension from the practice of law is the appropriate discipline to be imposed. In consideration of the mitigating circumstances of respondent's alcoholism, the board believes that respondent will benefit by further counseling and therefore, the suspension should be stayed in its entirety and respondent be placed on probation under the supervision of the board.

In petitioner's brief on exceptions to the report of the Hearing Committee on page 27, Office of Disciplinary Counsel stated the following: "It is clear that the Disciplinary Board will not impose probation on a respondent who has not volunteered a plan [which] he is committed to meet. Therefore, that option [probation] is not available." Petitioner cited *In re Anonymous No. 24 D.B. 78,* 11 D.&C.3d 419 (1979). The board does not agree with the position put forth by Office of Disciplinary Counsel. Probation is one of six types of discipline that may be imposed upon an attorney for misconduct in violation of the Disciplinary Rules. See Pa.R.D.E. 204. The Disciplinary Board of the Supreme Court of Pennsylvania has the power and the duty "to review the conclusions of hearing committees and special masters with respect to formal charges and to *prepare and forward its own findings and recommendations* together with the record of the proceeding before the Hearing Committee or special master, to the Supreme Court." Pa.R.D.E. 205(c)(6). In its review of a disciplinary matter, the board may in its discretion recommend to the Supreme Court of Pennsylvania the appropriate discipline, which includes pro-

bation. Thus, a respondent's failure to "volunteer" a probation plan at the time of the disciplinary hearing does not constitute a waiver of the possibility of implementing probation as the appropriate form of discipline. Probation is not a right that can be waived by the respondent in the same manner as a respondent may not waive suspension or public censure. Likewise, a respondent may not dictate the type of discipline to be imposed.

The case cited by Office of Disciplinary Counsel does not support the petitioner's proposition. In that case, *In re Anonymous No. 24 D.B. 78*, 11 D.&C.3d 419 (1979), the board, concerned with the limited resources of imposing probation, commented that it would be futile to impose probation where the respondent has shown a lack of willingness to comply with probation. There is absolutely no language in this case that suggests that the respondent must "volunteer" a probation plan in order to be eligible. In addition, it is to be noted that this case was decided before the newly implemented probation rules were put into effect. See Disciplinary Board Rules §§89.291 through 89.294. It is the board's position that it is in the reviewing power of the Disciplinary Board of the Supreme Court of Pennsylvania to determine whether or not to recommend probation as the appropriate form of discipline.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that [respondent] be suspended from the practice of law for a period of one year, that the suspension be stayed in its entirety, and that the respondent be placed on probation for a period of one year subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule §89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

The board recommends further that respondent be ordered to pay the expenses of investigating and prosecuting this matter, pursuant to Rule 208(g), Pa.R.D.E.

Mr. Paris did not participate in the adjudication.

### ORDER

And now, April 14, 1992, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated June 28, 1991 are approved and it is ordered that [respondent] be suspended from the practice of law for a period of one year, that the suspension be stayed in its entirety, and that the respondent be placed on probation for a period of one year subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with the sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board-approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

It is further ordered that the respondent shall pay the expenses of investigating and prosecuting this matter pursuant to Rule 208(g), Pa.R.D.E.